## SOUTHERN RAILWAY CO. v. VIRGINIA.

No. 26. Argued October 17, 18, 1933.—Decided December 4, 1933.

---

[7] *Dodge* v. *Tulleys*, 144 U.S. 451, 455–456; *Coal Co.* v. *Blatchford*, 11 Wall. 172, 175; *Knapp* v. *Railroad Co.*, 20 Wall. 117, 123–124.

*Messrs. Sidney S. Alderman* and *Thomas B. Gay,* with whom *Mr. S. R. Prince* was on the brief, for appellant.

*Messrs. J. F. Hall* and *Brockenbrough Lamb* for appellee.

MR. JUSTICE MCREYNOLDS delivered the opinion of the Court.

This appeal questions the validity of Ch. 62, Acts General Assembly of Virginia, 1930; Michie's Code 1930, § 3974a. Pertinent portions are in the margin.* The

---

* Ch. 62, Acts General Assembly of Virginia 1930, p. 74. (Michie's Code § 3974a).

" . . . Whenever the elimination of an existing crossing at grade of a State road by a railroad, or a railroad by a State road, and the substitution therefor of an overhead . . . crossing becomes, in the opinion of the state highway commissioner, necessary for public safety and convenience, . . . the state highway commissioner shall notify in writing the railroad company . . . upon which the existing crossing at grade . . . is, . . . stating particularly the point at which . . . the existing grade crossing is to be eliminated . . . and that the public safety or convenience requires that the crossing be made . . . above . . . the tracks of said railroad, or that the existing grade crossing should be eliminated or abolished, and a crossing constructed above . . . the tracks of said railroad, . . . and shall submit to said railroad company plans and specifications of the proposed work, . . . It shall thereupon be the duty of the railroad company to provide all equipment and materials and construct the overhead . . . crossing, . . . in accordance with the plans and specifications submitted by the state highway commissioner, . . . ; provided, however, that if the railroad company be not satisfied with the plans and specifications submitted

claim is that enforcement of the Act as construed by the State Supreme Court, would deprive appellant of property without due process of law and thus violate the XIV Amendment.

Purporting to proceed under the challenged chapter, the Highway Commissioner, without prior notice, advised appellant that in his opinion public safety and convenience required elimination of the grade crossing near Antlers; also, he directed construction there of an overhead passage according to accompanying plans and specifications. Replying, the Company questioned the Commissioner's conclusion upon the facts, denied the validity of the Act, and refused to undertake the work. Thereupon, by petition he asked the State Corporation Commission for an order requiring it to proceed. A demurrer to this questioned the constitutionality of the statute. It especially pointed out that the Commissioner undertook to ordain,

---

by the state highway commissioner, such company may within sixty days after the receipt of said plans and specifications, if the railroad company and the state highway commissioner be unable in the meantime to agree on plans and specifications, including the grade of the approaches and the point to which the liability of the railroad shall extend, file a petition with the state corporation commission setting out its objections to the plans and specifications and its recommendations of plans and specifications in lieu thereof, and the commission shall hear the complaint as other complaints are heard and determined by that body, and shall approve the plans submitted by the state highway commissioner, or other plans in lieu thereof; and it shall thereupon be the duty of the railroad company to provide all equipment and materials and construct, widen, strengthen, remodel, redesign, relocate or replace, as the case may be, the overhead or underpass crossing, or provide a new or improved structure in lieu thereof, within its right of way limits, and the state highway commissioner the portion outside of the railroad right of way, unless otherwise mutually agreed upon, in accordance with the plans and specifications approved by the State corporation commission."

Upon completion of the work, the costs are to be divided between the State and the railroad, etc.

without prior notice, and that there was no provision for any review except in respect of the proposed plans for the structure. The Commission overruled the demurrer and directed the Railway to construct the overhead. The Supreme Court construed the statute and approved this action.

As authoritatively interpreted the challenged Act permits the Highway Commissioner—an executive officer—without notice or hearing to command a railway company to abolish any designated grade crossing and construct an overhead when, in his opinion, necessary for public safety and convenience. His opinion is final upon the fundamental question whether public convenience and necessity require the elimination, unless what the Supreme Court denominates "arbitrary" exercise of the granted power can be shown. Upon petition, filed within sixty days, the Corporation Commission may consider the proposed plans and approve or modify them, but nothing more. The statute makes no provision for review by any court. But the Supreme Court has declared that a court of equity may give relief under an original bill where "arbitrary" action can be established.

As construed and applied, we think the statute conflicts with the XIV Amendment.

Certainly, to require abolition of an established grade crossing and the outlay of money necessary to construct an overhead would take the railway's property in a very real sense. This seems plain enough both upon reason and authority. *Washington ex rel. Oregon R. & N. Co.* v. *Fairchild*, 224 U.S. 510, 523, 524; *Great Northern Ry. Co.* v. *Minnesota*, 238 U.S. 340, 345. See *Chicago, M. & St. P. Ry. Co.* v. *Board of Comm'rs*, 76 Mont. 305; 247 Pac. 162.

If we assume that by proper legislation a State may impose upon railways the duty of eliminating grade crossings, when deemed necessary for public safety and convenience, the question here is whether the challenged statute meets the requirements of due process of law.

Undoubtedly, it attempts to give an administrative officer power to make final determination in respect of facts— the character of a crossing and what is necessary for the public safety and convenience—without notice, without hearing, without evidence; and upon this *ex parte* finding, not subject to general review, to ordain that expenditures shall be made for erecting a new structure. The thing so authorized is no mere police regulation.

In *Interstate Commerce Comm'n* v. *Louisville & N. R. Co.*, 227 U.S. 88, 91, replying to the claim that a Commission's order made without substantial supporting evidence was conclusive, this Court declared:

"A finding without evidence is arbitrary and baseless. And if the Government's contention is correct, it would mean that the Commission had a power possessed by no other officer, administrative body, or tribunal under our Government. It would mean that where rights depended upon facts, the Commission could disregard all rules of evidence, and capriciously make findings by administrative fiat. Such authority, however beneficently exercised in one case, could be injuriously exerted in another; is inconsistent with rational justice, and comes under the Constitution's condemnation of all arbitrary exercise of power.

" In the comparatively few cases in which such questions have arisen it has been distinctly recognized that administrative orders, quasi-judicial in character, are void if a hearing was denied; if that granted was inadequate or manifestly unfair; if the finding was contrary to the ' indisputable character of the evidence.' "

*Chicago, M. & St. P. Ry. Co.* v. *Minnesota,* 134 U.S. 418, 457, 458, involved an act of the Minnesota legislature, which permitted the commission finally to fix railway rates without notice. It was challenged because of conflict with the due process clause. This Court said:

" It deprives the company of its right to a judicial investigation, by due process of law, under the forms and

with the machinery provided by the wisdom of successive ages for the investigation judicially of the truth of a matter in controversy, and substitutes therefor, as an absolute finality, the action of a railroad commission which, in view of the powers conceded to it by the state court, cannot be regarded as clothed with judicial functions or possessing the machinery of a court of justice. . . . No hearing is provided for, no summons or notice to the company before the commission has found what it is to find and declared what it is to declare, no opportunity provided for the company to introduce witnesses before the commission, in fact, nothing which has the semblance of due process of law; . . .

" The question of the reasonableness of a rate of charge for transportation by a railroad company, involving as it does the element of reasonableness both as regards the company and as regards the public, is eminently a question for judicial investigation, requiring due process of law for its determination. If the company is deprived of the power of charging reasonable rates for the use of its property, and such deprivation takes place in the absence of an investigation by judicial machinery, it is deprived of the lawful use of its property, and thus, in substance and effect, of the property itself, without due process of law and in violation of the Constitution of the United States; . . ."

The claim that the questioned statute was enacted under the police power of the State and, therefore, is not subject to the standards applicable to legislation under other powers, conflicts with the firmly established rule that every state power is limited by the inhibitions of the XIV Amendment. *Chicago, M., St. P. & P. Ry. Co.* v *Tompkins,* 176 U.S. 167; *Eubank* v. *Richmond,* 226 U.S. 137, 143; *Adams* v. *Tanner,* 244 U.S. 590, 594; *Adkins* v. *Children's Hospital,* 261 U.S. 525, 549, 550.

*Lawton* v. *Steele,* 152 U.S. 133, points out that the right to destroy private property—nuisances &c.—for pro-

tection against imminent danger, has long been recognized. Such action does no violence to the XIV Amendment. The principles which control have no present application. Here, the statute itself contemplates material delay; no impending danger demands immediate action. During sixty days the railway may seek modification of the plans proposed.

Counsel submit that the Legislature, without giving notice or opportunity to be heard, by direct order might have required elimination of the crossing. Consequently, they conclude the same end may be accomplished in any manner which it deems advisable, without violating the Federal Constitution. But if we assume that a state legislature may determine what public welfare demands and by direct command require a railway to act accordingly, it by no means follows that an administrative officer may be empowered, without notice or hearing, to act with finality upon his own opinion and ordain the taking of private property. There is an obvious difference between legislative determination and the finding of an administrative official not supported by evidence. In theory, at least, the legislature acts upon adequate knowledge after full consideration and through members who represent the entire public.

Chapter 62 undertakes to empower the Highway Commissioner to take railway property if and when he deems it necessary for public safety and convenience. It makes no provision for a hearing, and grants no opportunity for a review in any court. This, we think, amounts to the delegation of purely arbitrary and unconstitutional power unless the indefinite right of resort to a court of equity referred to by the court below affords adequate protection.

Considering the decisions here, it is clear that no such authority as that claimed for the Commissioner could be entrusted to an administrative office or body under the power to tax, to impose assessments for benefits, to regulate common carriers, to establish drainage districts, or to

regulate business. *Turner* v. *Wade*, 254 U.S. 64, 70; *Browning* v. *Hooper*, 269 U.S. 396, 405; *Interstate Commerce Comm'n* v. *Louisville & N. R. Co.*, 227 U.S. 88; *Embree* v. *Kansas City Road District*, 240 U.S. 242, 247; *Yick Wo* v. *Hopkins*, 118 U.S. 356. Appellee makes no claim to the contrary. He affirms, however, that under the police power the legislature could rightly grant the challenged authority. But, as pointed out above, this is subject to the inhibitions of the XIV Amendment, and we think the suggested distinction between it and other powers of the State is unsound.

This Court has often recognized the power of a State, acting through an executive officer or body, to order the removal of grade crossings; but in all these cases there was the right to a hearing and review by some court. See *Great Northern Ry. Co.* v. *Clara City*, 246 U.S. 434; *Erie R. Co.* v. *Public Utility Comm'rs*, 254 U.S. 394; *Lehigh Valley R. Co.* v. *Board of Comm'rs*, 278 U.S. 24.

After affirming appellant's obligation to comply with the Commissioner's order, the court below said: "The railroad is not without remedy. Should the power vested in the Highway Commissioner be arbitrarily exercised, equity's long arm will stay his hand." But, by sanctioning the order directing the Railway to proceed, it, in effect, approved action taken without hearing, without evidence, without opportunity to know the basis therefor. This was to rule that such action was not necessarily "arbitrary." There is nothing to indicate what that court would deem arbitrary action or how this could be established in the absence of evidence or hearing. In circumstances like those here disclosed no contestant could have fair opportunity for relief in a court of equity. There would be nothing to show the grounds upon which the Commissioner based his conclusion. He alone would be cognizant of the mental processes which begot his urgent opinion.

The infirmities of the enactment are not relieved by an indefinite right of review in respect of some action spoken of as arbitrary. Before its property can be taken under the edict of an administrative officer the appellant is entitled to a fair hearing upon the fundamental facts. This has not been accorded. The judgment below must be reversed. The cause will be remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

The CHIEF JUSTICE, MR. JUSTICE STONE and MR. JUSTICE CARDOZO dissent upon the ground that there has been a lawful delegation to the State Highway Commissioner of the power to declare the need for the abatement of a nuisance through the elimination of grade crossings dangerous to life and limb; that this power may be exercised without notice or a hearing *(Chicago, B. & Q. R. Co.* v. *Nebraska,* 170 U.S. 57, 77), provided adequate opportunity is afforded for review in the event that the power is perverted or abused; and that such opportunity has been given by the statutes of Virginia as construed by its highest court.